UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:26-cv-1985

EMMANUEL DUPERME,

Plaintiff,

v.

OHMH, LLC.,
d/b/a "ORLANDO HEALTH
MELBOURNE HOSPITAL",

Defendant.
________________________________________/

**COMPLAINT**

Plaintiff, EMMANUEL DUPERME, by and through undersigned counsel, sues Defendant, OHMH, LLC., d/b/a "ORLANDO HEALTH MELBOURNE HOSPITAL", and alleges as follows:

Introduction

1. This is an action for damages and equitable relief to redress unlawful employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act of 1992 ("FCRA"), Chapter 760, Florida Statutes. Plaintiff, a black Haitian national, was subjected to discrimination and retaliation by his employer, OHMH, LLC.,

d/b/a "ORLANDO HEALTH MELBOUNE HOSPITAL", culminating in his termination on November 6th, 2025.

Jurisdiction And Venue

2. This is an action for damages brought in excess of $75,000.00, exclusive of interest, attorney's fees, and costs.
3. This action is authorized and instituted pursuant to The Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"); and the Florida Civil Rights Act of 1992 (FCRA), Florida Statute Chapter 760.
4. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and §1343. Plaintiff invokes this Court's supplemental and pendant jurisdiction over Plaintiff's state law claims because they arise out of the same nucleus of operative facts as the federal case and pursuant to 28 U.S.C. §§1332 and 1367.
5. Venue lies in this District under 28 U.S.C. § 1391(b) because the unlawful employment practices occurred in Brevard County, Florida.

Parties

6. Plaintiff, EMMANUEL DUPERME (hereinafter, "DUPERME" or "Plaintiff"), is a resident of Brevard County, Florida, within the jurisdiction of this Court, whom the Defendant employed. The Plaintiff is a member of

certain protected classes of persons because of his Race, Color, and National Origin and participation in protected activity under federal and state law.

7. Defendant, OHMH, LLC., d/b/a "ORLANDO HEALTH MELBOURNE HOSPITAL" (hereinafter, "OHMH", or "Defendant"), is a Florida Limited Liability Company, conducting business in Brevard County, Florida, within the jurisdiction of this Honorable Court. Defendant is a hospital located at 250 N. Wickham Road, Melbourne, FL 32935, where Plaintiff worked.

8. At all relevant times, Defendant OHMH has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e (b), (g), and (h), and Defendant always had 15 or more employees for each working day in each of 20 or more calendar weeks.

Conditions Precedent and Procedural Background

9. On or about March 16th, 2026, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No.: 510-2026-06084), alleging violations of Title VII and the FCRA based on his Race, Color, and National Origin, as well as in his participation in statutorily protected activity.

10. The EEOC accepted the charge for review and subsequently issued a Notice of Right to Sue on July 1st, 2026. **See attached Exhibit "A".**

11. This action is timely filed within 90 days thereafter; all conditions precedent have been satisfied or waived.

<u>General Factual Allegations</u>

12. Plaintiff, DUPERME, is a black individual of Haitian National Origin. He is a member of a protected class under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992 ("FCRA"), by virtue of his Race, Color, and National Origin, as well as his participation in protected activities as defined under federal and state law.

13. Defendant OHMH owns, operates and manages "ORLANDO HEALTH MELBOURNE HOSPITAL", a general medical and surgical acute hospital located in Melbourne, Florida.

14. Defendant OHMH employed Plaintiff DUPERME from on or about November 18th, 2024, through November 6th, 2025, or for a period of approximately one year. At the time of his termination, Plaintiff had an hourly rate of $21.08, and on average, Plaintiff earned a total of $758.88 per week.

15. Plaintiff worked as a Security Officer at the Defendant's hospital installations.

16. Throughout his employment, Plaintiff performed his duties faithfully and competently. He met or exceeded his employer's expectations and was qualified for his position.

17. Notwithstanding his qualifications and excellent work ethic, Plaintiff was subjected to workplace discrimination on account of his race, color and national origin.

18. From the onset of his employment, Plaintiff began to be subjected to highly offensive and discriminatory remarks, as well as to a harassment, based solely on his race, color, and Haitian national origin.

19. Plaintiff's co-worker, Cobey Bates, discriminated against Plaintiff in a frequent and pervasive manner. From day one, Mr. Bates took issue with Plaintiff's race and national origin and questioned Plaintiff about his national origin and Haitian accent.

20. During Plaintiff's employment, Mr. Bates repeatedly mocked Plaintiff's Haitian accent and referred to Plaintiff using racially and ethnically derogatory nicknames, including calling Plaintiff "Afro Man" and making jokes about Plaintiff's culture and background.

21. On multiple occasions, in a frequent and pervasive manner, Mr. Bates made offensive and discriminatory jokes and comments about Plaintiff's religion

and culture in front of other employees, causing Plaintiff great embarrassment and humiliation.

22. Moreover, on multiple occasions, in a frequent and pervasive manner, Mr. Bates made fun of, and ridiculed, Plaintiff's Haitian accent, also causing Plaintiff great embarrassment and humiliation.

23. Due to the workplace discrimination he was experiencing, on January of 2025, Plaintiff complained to manager David Fitzpatrick about the discrimination he was being subjected to by co-worker Cobey Bates. Plaintiff was asked whether he wanted to file a formal complaint, but Plaintiff did not pursue said course of action because he was still within his probationary period and he feared losing his job. Moreover, Mr. Bates had close relationships with management and Plaintiff feared repercussions.

24. Notwithstanding, the discrimination and harassment of Plaintiff by his co-worker Cobey Bates continued.

25. On or about February 16, 2025, while Plaintiff was reporting for work during a shift change, Mr. Bates stated in the presence of others that Plaintiff was a "Seventh-Day African," mocking Plaintiff's race, national origin and religion. These comments were humiliating, unwelcome, and created a hostile work environment for Plaintiff DUPERME.

26. On or about February 18, 2025, given that no remedial action had been taken, Plaintiff made a formal written complaint to Manager Alex Gonzalez, detailing the discriminatory comments and harassment. Plaintiff was informed that the complaint was forwarded to Human Resources and that Plaintiff would be contacted.

27. Despite Plaintiff's complaint, the discriminatory harassment continued, and no meaningful corrective action was taken.

28. On or about October of 2025, during a meeting with management, Plaintiff engaged in statutorily protected activity. During this meeting, Plaintiff complained and raised concerns about why his discrimination complaint had never been properly investigated, especially after learning that Mr. Bates had been suspended for discriminatory conduct toward other Black employees. Plaintiff also requested a transfer to another location to avoid contact with his harasser.

29. Just a couple of weeks after Plaintiff had engaged in statutorily protected activity, on November 3rd, 2025, Plaintiff was falsely accused of "sleeping while on duty" and was ultimately terminated on November 6th, 2025.

30. Plaintiff DUPERME was terminated by Defendant OHMH in retaliation for complaining about discrimination based on his race, color and national

origin. Prior to Plaintiff's complaints, Plaintiff had not been disciplined, and his job performance exceeded the basic requirements of his job.

31. Thus, on November 6th, 2025, Plaintiff was terminated by the Defendant in retaliation for Plaintiff having engaged in statutorily protected activity.

32. Similarly situated employees outside Plaintiff's protected class were treated more favorably and were not subjected to similar harassment, discipline or termination for comparable conduct.

33. Defendant's actions deprived Plaintiff of equal employment opportunities, causing him to suffer significant emotional and financial harm.

34. The unlawful practices described above were intentional, willful, and in direct violation of the anti-discrimination provisions of Title VII as well as the Florida Civil Rights Act of 1992, Fla. Stat. §760.01 et seq.

35. Plaintiff's termination occurred in close temporal proximity to his engagement in protected activity in October of 2025.

36. Defendant is subject to vicarious liability for the actions of its employees and management agents because it failed to take appropriate remedial action to stop the discrimination, harassment, and retaliation, despite being aware of such conduct was occurring.

37. Plaintiff has retained the undersigned counsel to represent him in this matter and is obligated to pay reasonable attorneys' fees and costs.

**COUNT I:**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964:**
**DISCRIMINATION BASED ON RACE, COLOR & NATIONAL ORIGIN**

38. Plaintiff DUPERME re-adopts every factual allegation as stated in paragraphs 1-37 above as if set out in full herein.

39. At all times material hereto, the Employer/Defendant OHMH failed to comply with the Civil Rights Act of 1964 [42 U.S.C. 2000 e-2 (a)], which states, "It shall be an unlawful employment practice for an employer to: (1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's Race, Color, Religion, Sex, or National Origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's Race, Color, Religion, Sex, or National Origin."

40. Defendant OHMH employed Plaintiff DUPERME from on or about November 18th, 2024, through November 6th, 2025, or for a period of approximately one year. At the time of his termination, Plaintiff had an hourly rate of $21.08, and on average, Plaintiff earned a total of $758.88 per week.

41. Plaintiff worked as a Security Officer at the Defendant's hospital installations.

42. Throughout his employment, Plaintiff performed his duties faithfully and competently. He met or exceeded his employer's expectations and was qualified for his position.

43. Notwithstanding his qualifications and excellent work ethic, Plaintiff was subjected to workplace discrimination on account of his race, color and national origin.

44. From the onset of his employment, Plaintiff began to be subjected to highly offensive and discriminatory remarks, as well as to a harassment, based solely on his race, color, and Haitian national origin.

45. Plaintiff's co-worker, Cobey Bates, discriminated against Plaintiff in a frequent and pervasive manner. From day one, Mr. Bates took issue with Plaintiff's race and national origin and questioned Plaintiff about his national origin and Haitian accent.

46. During Plaintiff's employment, Mr. Bates repeatedly mocked Plaintiff's Haitian accent and referred to Plaintiff using racially and ethnically derogatory nicknames, including calling Plaintiff "Afro Man" and making jokes about Plaintiff's culture and background.

47. On multiple occasions, in a frequent and pervasive manner, Mr. Bates made offensive and discriminatory jokes and comments about Plaintiff's religion and culture in front of other employees, causing Plaintiff great embarrassment and humiliation.

48. Moreover, on multiple occasions, in a frequent and pervasive manner, Mr. Bates made fun of, and ridiculed, Plaintiff's Haitian accent, also causing Plaintiff great embarrassment and humiliation.

49. Due to the workplace discrimination he was experiencing, on January of 2025, Plaintiff complained to manager David Fitzpatrick about the discrimination he was being subjected to by co-worker Cobey Bates. Plaintiff was asked whether he wanted to file a formal complaint, but Plaintiff did not pursue said course of action because he was still within his probationary period and he feared losing his job. Moreover, Mr. Bates had close relationships with management and Plaintiff feared repercussions.

50. Notwithstanding, the discrimination and harassment of Plaintiff by his co-worker Cobey Bates continued.

51. On or about February 16, 2025, while Plaintiff was reporting for work during a shift change, Mr. Bates stated in the presence of others that Plaintiff was a "Seventh-Day African," mocking Plaintiff's race, national origin and

religion. These comments were humiliating, unwelcome, and created a hostile work environment for Plaintiff.

52. Defendant's decision to discriminate against Plaintiff DUPERME was based on Plaintiff's Race, Color and National Origin.

53. At all relevant times, including the time of the discrimination, Defendant OHMH was aware that Plaintiff DUPERME was of black and of Haitian National Origin.

54. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

55. The Plaintiff was qualified for the position apart from his apparent race, color and national origin.

56. The Plaintiff was discriminated against by his co-worker and Managers, because he was black and of Haitian national origin.

57. The Defendant is a sophisticated employer who has actual knowledge of the requirements of Title VII of the Civil Rights Act of 1964, as amended.

58. The discrimination and harassment were perpetrated by the decision-makers, and this fact perpetuated and facilitated an abusive, discriminatory, and hostile work environment based on the Plaintiff's Race, Color, and National Origin, within the meaning of Title VII.

59. Defendant OHMH, through its practices and policies as an employer, willfully and with malicious or reckless disregard of Plaintiff's federally protected rights, discriminated against Plaintiff DUPERME on account of his Race, Color and National Origin, in violation of the Act, with respect to its decision to treat Plaintiff differently from other employees.

60. Defendant OHMH wrongfully terminated Plaintiff DUPERME, and Defendant's unjustified discrimination against Plaintiff directly and proximately caused Plaintiff's termination from employment because of his complaints of discrimination.

61. Any alleged nondiscriminatory reason for the termination of Plaintiff's employment asserted by Defendant OHMH is a mere pretext for the actual reasons for the termination from employment, Plaintiff's Race, Color, National Origin, and complaints related to the unlawful acts of Discrimination and Harassment.

62. Defendant OHMH is subjected to vicarious liability for the actions of its agents because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which Plaintiff was subjected to, despite Defendant's knowledge that such discrimination, harassment, and retaliation were occurring.

63. As a direct and proximate result of Defendant's intentional conduct, Plaintiff DUPERME suffered serious economic losses as well as mental pain and suffering.

64. Plaintiff has retained the law offices of the undersigned attorney to represent him in this action and is obliged to pay reasonable attorneys' fees and costs.

<u>Prayer For Relief</u>

Wherefore, Plaintiff DUPERME respectfully requests that this court order the following:

A. Grant a permanent injunction enjoining Defendant OHMH, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates based on Race, Color and National Origin.

B. Reinstate Plaintiff DUPERME to the same position he held before the retaliatory personnel action or to an equivalent position.

C. Reinstate full fringe benefits and seniority rights to Plaintiff DUPERME.

D. Order Defendant OHMH to make Plaintiff DUPERME whole by compensating Plaintiff for lost wages and benefits, including front pay, back pay with prejudgment interest, and other remuneration for mental pain,

anguish, pain, and humiliation resulting from the employment discrimination suffered.

E. Award a money judgment representing prejudgment interest.

F. Award any other compensation allowed by law, including punitive damages,

G. Award attorney's fees and costs.

Jury Trial Demand

Plaintiff DUPERME demands a trial by jury on all issues triable as a matter of right.

**COUNT II:**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: RETALIATION**

65. Plaintiff DUPERME re-adopts every factual allegation as stated in paragraphs 1-37 above as if set out in full herein.

66. This an action against OHMH for unlawful retaliation under Title VII.

67. At all times material hereto, the Employer/Defendant OHMH failed to comply with the Civil Rights Act of 1964 [42 U.S.C. 2000 e-2 (a)], Section 704(a), which makes it unlawful for an employer to retaliate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing *under this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added).

68. Defendant OHMH employed Plaintiff DUPERME from on or about November 18th, 2024, through November 6th, 2025, or for a period of approximately one year. At the time of his termination, Plaintiff had an hourly rate of $21.08, and on average, Plaintiff earned a total of $758.88 per week.

69. Plaintiff worked as a Security Officer at the Defendant's hospital installations.

70. Throughout his employment, Plaintiff performed his duties faithfully and competently. He met or exceeded his employer's expectations and was qualified for his position.

71. Notwithstanding his qualifications and excellent work ethic, Plaintiff was subjected to workplace discrimination on account of his race, color and national origin.

72. Due to the workplace discrimination he was experiencing, on January of 2025, Plaintiff complained to manager David Fitzpatrick about the discrimination he was being subjected to by co-worker Cobey Bates. Plaintiff was asked whether he wanted to file a formal complaint, but Plaintiff did not pursue said course of action because he was still within his

probationary period and he feared losing his job. Moreover, Mr. Bates had close relationships with management and Plaintiff feared repercussions.

73. Notwithstanding, the discrimination and harassment of Plaintiff by his co-worker Cobey Bates continued.

74. On or about February 16, 2025, while Plaintiff was reporting for work during a shift change, Mr. Bates stated in the presence of others that Plaintiff was a "Seventh-Day African," mocking Plaintiff's race, national origin and religion. These comments were humiliating, unwelcome, and created a hostile work environment for Plaintiff DUPERME.

75. On or about February 18, 2025, given that no remedial action had been taken, Plaintiff made a formal written complaint to Manager Alex Gonzalez, detailing the discriminatory comments and harassment. Plaintiff was informed that the complaint was forwarded to Human Resources and that Plaintiff would be contacted.

76. Despite Plaintiff's complaint, the discriminatory harassment continued, and no meaningful corrective action was taken.

77. On or about October of 2025, during a meeting with management, Plaintiff engaged in statutorily protected activity. During this meeting, Plaintiff complained and raised concerns about why his discrimination complaint had never been properly investigated, especially after learning that Mr.

Bates had been suspended for discriminatory conduct toward other Black employees. Plaintiff also requested a transfer to another location to avoid contact with his harasser.

78. Just a couple of weeks after Plaintiff had engaged in statutorily protected activity, on November 3rd, 2025, Plaintiff was falsely accused of "sleeping while on duty" and was ultimately terminated on November 6th, 2025.

79. At the time of the termination of his employment, Plaintiff did perform and excel at the performance of the essential functions of his position.

80. Any alleged nondiscriminatory reason for terminating Plaintiff asserted by Defendant is a mere pretext for the actual reasons for termination, Plaintiff's complaints of Discrimination and Harassment due to his Race, Color and National Origin.

81. Retaliation based on having engaged in a protected activity constitutes unlawful retaliation within the meaning of Title VII.

82. Defendant OHMH is subjected to vicarious liability because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which Plaintiff was subjected despite Defendant's knowledge that such discrimination, harassment, and retaliation were occurring.

83. Furthermore, Defendant knowingly condoned and ratified the discrimination and retaliation of Plaintiff.

84. Defendant's known allowance and ratification of the wrongful conduct created and facilitated an abusive, discriminatory, and hostile work environment based on Plaintiff's Race, Color and National Origin, within the meaning of the Civil Rights Act of 1964 [42 U.S.C. 2000 e-2 (a)].
85. As a direct and proximate result of the actions and/or omissions of Defendant, Plaintiff has suffered injury and losses, including a violation of his statutory rights.
86. Defendant's termination of Plaintiff was the culmination of an unlawful pattern of harassment and retaliation. Plaintiff DUPERME has incurred substantial monetary losses and has suffered emotional distress, embarrassment, and humiliation.
87. Plaintiff has retained the law offices of the undersigned attorney to represent him in this action and is obliged to pay reasonable attorneys' fees and costs.

## Prayer For Relief

Wherefore, Plaintiff DUPERME respectfully requests that this court order the following:

A. Grant a permanent injunction enjoining Defendant OHMH, its officers, successors, assigns, and all persons in active concert or participation with it,

from engaging in employment practice which constitutes unlawful retaliation for having engaged in protected activity, and;

B. Reinstate Plaintiff DUPERME to the same position he held before the retaliatory personnel action or to an equivalent position;

C. Reinstate full fringe benefits and seniority rights to Plaintiff;

D. Order Defendant OHMH to make Plaintiff whole by compensating Plaintiff for lost wages, benefits, including front pay, back pay with prejudgment interest, and other remuneration for mental pain, anguish, pain, and humiliation due to the discrimination against Plaintiff and due to the retaliatory discharge;

E. For a money judgment representing prejudgment interest;

F. Award any other compensation allowed by law, including compensatory damages, punitive damages, and attorneys' fees and costs.

Jury Trial Demand

Plaintiff DUPERME demands a trial by jury on all issues triable as a matter of right.

**COUNT III:**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 (CHAPTER 760): RACE, COLOR & NATIONAL ORIGIN DISCRIMINATION**

88. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as though fully set forth herein.

89. At all times, material hereto, the Employer/Defendant, OHMH, failed to comply with the Florida Civil Rights Act of 1992 [Florida Statutes Section 760.10], which states,

"*It is an unlawful employment practice for an employer: To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.*"

90. The discrimination of Plaintiff DUPERME by Defendant OHMH was caused by Defendant being aware of Plaintiff's Race, Color and National Origin.

91. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

92. Plaintiff was qualified for the position apart from his apparent Race, Color and National Origin.

93. Defendant OHMH discriminated against plaintiff because Plaintiff was black and of Haitian National Origin.

94. Defendant is a sophisticated employer who has actual knowledge of the requirements of the Florida Civil Rights Act, Chapter 760.

95. The failure of Defendant to adhere to the mandates of the Act was willful, and its violations of the provisions of the Act were willful.

96. Defendant OHMH, through its practices and policies as an employer, willfully and with malicious or reckless disregard for Plaintiff's state-protected rights, discriminated against Plaintiff DUPERME on account of his Race, Color, and National Origin, in violation of the Act, with respect to its decision to treat Plaintiff differently from other employees.

97. Defendant OHMH wrongly terminated Plaintiff DUPERME, and Plaintiff's termination from employment was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because of Plaintiff's Race, Color and National Origin.

98. As a direct and proximate result of Defendant's intentional conduct, Plaintiff suffered serious economic losses as well as mental anguish, humiliation, pain, and suffering.

99. Any alleged nondiscriminatory reason for the termination of Plaintiff's employment asserted by Defendant is a mere pretext for the actual reasons for the termination from employment, Plaintiff's Race, Color, National Origin, and complaints related to the unlawful acts of discrimination and harassment.

100. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights, protecting a person from discrimination due to Race, Color and National Origin.

101. Discrimination based on Race, Color and National Origin constitutes unlawful discrimination in violation of the Florida Civil Rights Act, Chapter 760.

102. Defendant OHMH is subject to vicarious liability for the actions of its management, employees, and its own agents because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which Plaintiff was subjected, despite Defendant's knowledge that such discrimination, harassment, and retaliation were occurring.

103. Plaintiff has retained the law offices of the undersigned Attorney to represent him in this action and is obligated to pay reasonable Attorneys' fees and costs.

<u>Prayer For Relief</u>

Wherefore, Plaintiff DUPERME respectfully requests that this Court order the following:

A. Grant a permanent injunction enjoining Defendant OHMH, its officers, successors, assigns, and all persons in active concert or participation with it from engaging in any employment practice that discriminates based on Race, Color and National Origin;

B. Reinstate Plaintiff DUPERME to the same position held before the retaliatory personnel action or to an equivalent position;

C. Reinstate full fringe benefits and seniority rights to Plaintiff;

D. Order Defendant OHMH to make Plaintiff DUPERME whole by compensating Plaintiff for lost wages and benefits, including front pay, back pay with prejudgment interest, and other remuneration for mental pain, anguish, pain, and humiliation;

E. For a money judgment representing prejudgment interest;

F. Award any other compensation allowed by law, including punitive damages and Attorney's fees (448.104), and further demands a trial by jury on all issues so triable.

Demand for a Jury Trial

Plaintiff DUPERME demands a trial by jury on all issues triable as a matter of right.

**COUNT IV:**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT,**
**CHAPTER 760, FLORIDA STATUTES; RETALIATION**

104. Plaintiff DUPERME realleges paragraphs 1 through 37 as if fully set forth herein.

105. This is an action against Defendant OHMH for unlawful retaliation under the Florida Civil Rights Act, Chapter 760, Fl Statutes (FCRA).

106. The FCRA contains an anti-retaliation provision forbidding employers from retaliating or from taking adverse personnel action against

those employees who exercise their lawful and protected rights under the Act.

107. The FCRA, *Fla. Stat. Section 760.10,* (7) reads in applicable part as follows:

"*It is an unlawful employment practice for an employer, an employment agency, a joint labor management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.*"

108. Plaintiff is a member of a protected class under the Florida Civil Rights Act because of his Race, Color and National Origin, as well as his participation in protected activities within the meaning of the Florida Civil Rights Act.

109. While working for Defendant OHMH, Plaintiff was subjected to discrimination and harassment based on his Race, Color and National Origin.

110. Plaintiff reasonably engaged in protected activity by complaining about the unlawful discrimination with his own employer, OHMH.

111. Plaintiff complained and opposed the unlawful discrimination and harassment suffered at the hands of his co-worker and management.

112. On or about November 6h, 2025, Plaintiff DUPERME was terminated by Defendant, and Plaintiff's termination was directly and proximately caused by Defendant's unjustified discrimination and retaliation against Plaintiff because of his complaints and opposition to unlawful discrimination and harassment based on his Race, Color and National Origin, in violation of State Law.

113. At the time that Plaintiff opposed discrimination and harassment based on his Race, Color and National Origin, Plaintiff was terminated without good cause and in violation of the anti-retaliation provision of the FCRA, *Fla. Stat. Section 760.10,* (7)

114. Moreover, the Plaintiff's termination occurred in temporal proximity to the Plaintiff's participation in protected activity.

115. Plaintiff's protected activity resulted in adverse retaliatory actions that altered the terms, conditions, and privileges of Plaintiff's employment.

116. Any alleged nondiscriminatory reason for terminating Plaintiff asserted by Defendant is a mere pretext for the actual reasons for termination, Plaintiff's complaints of discrimination and harassment based on his Race, Color and National Origin.

117. The Defendant's actions were malicious and were taken recklessly, with disregard for the plaintiff's rights, as they protected a person from discrimination based on their Race, Color and National Origin and retaliation for complaints of unlawful discrimination.

118. Retaliation based on having engaged in a protected activity constitutes unlawful retaliation under the FCRA, *Fla. Stat. Section 760.10,* (7).

119. As a result of the retaliation, Plaintiff DUPERME has incurred substantial monetary losses and has suffered emotional distress, embarrassment, and humiliation.

120. Defendant OHMH is subject to vicarious liability for the actions of its management, employees, and its own agents because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which Plaintiff was subjected, despite Defendant's knowledge that such discrimination, harassment, and retaliation were occurring.

121. Plaintiff has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay reasonable attorneys' fees and costs.

<u>Prayer For Relief</u>

Wherefore, Plaintiff DUPERME respectfully requests that this Court order the following;

A. Grant a permanent injunction enjoining Defendant OHMH, its officers, successors, assigns, and all persons in active concert or participation with it from engaging in further discriminatory and retaliatory practice in violation of the FCRA, Fla. Stat. Section 760.10, (7);

B. Award Plaintiff DUPERME a judgment against Defendant for compensatory damages as determined by the Trier of fact;

C. Award Plaintiff DUPERME restitutionary damages, including back pay, front pay, liquidated damages, any "Employee Welfare Benefits," and retirement benefits for the time Plaintiff should have worked absent Defendant's discriminatory treatment;

D. Enter Judgment for Punitive damages against Defendant OHMH;

E. Award all reasonable attorney's fees and costs incurred in connection with this action; and any other and further relief as justice may require.

Demand for a Jury Trial

Plaintiff DUPERME demands a trial by jury on all issues triable as a matter of right.

Designation of Lead Attorney

Pursuant to Local Rule 2.02(a), Plaintiff designates Alexis Mena-Glasgow, Esq. as Lead Counsel.

Dated: September 4th , 2026

Respectfully submitted,

By: ***_/s/ Alexis Mena-Glasgow_***_

Alexis Mena-Glasgow
Florida Bar No.: 117839
SIMPSON & MENA, P.A.
2250 SW Third Avenue, Suite 501
Miami, FL 33129
Telephone: (305) 912-7665
Email: **alexis@simpsonmenalaw.com**
*Attorney for Plaintiff*